BOARD OF APPEALS OF WESTWOOD *vs.* ARISTIDS LAMBERGS
& another.[1]

No. 96-P-384.

Norfolk. January 9, 1997. - March 28, 1997.

Present: WARNER, C.J., KAPLAN, & IRELAND, JJ.

*Zoning,* Board of appeals: decision; Constructive grant of relief; Variance; Frontage. *Practice, Civil,* Zoning appeal.

Where a zoning board of appeals did not file its decision on a request for a variance from a frontage requirement of the municipal by-law within one hundred days after the filing of the variance application as required by G. L. c. 40A, § 15, as amended by St. 1987, c. 498, § 3, the application was, by operation, of that statute, deemed to be constructively granted [414-415]; and a late-filed amendment by the board that changed the result of the original late-filed decision substantively was of no effect [415-416].

CIVIL ACTION commenced in the Superior Court Department on April 1, 1994.

The case was heard by *Elizabeth Butler,* J., on a motion for summary judgment.

*Thomas P. McCusker, Jr.,* Town Counsel, for the plaintiff.
*Christopher M. Dahlstrom* for the defendants.

WARNER, C.J. This is an appeal by the board of appeals of Westwood (board), from a judgment of the Norfolk Superior Court determining that the defendants, Aristids and Dzidra Lambergs, were entitled to a constructive grant of a variance from the lot frontage requirements of the Westwood zoning by-law.

The facts may be summarized as follows. In a letter dated September 14, 1993, the Lambergs requested a written determination from the Westwood building commissioner as to whether a vacant lot they owned was buildable under the

---

[1]Dzidra Lambergs.

Westwood zoning by-law. The commissioner replied, in a letter dated September 20, 1993, that he recollected the frontage of the parcel to be approximately ninety-four feet, short of the 125-foot frontage required by § 14(b) of the zoning by-law for the district in which the lot was located.

On November 23, 1993, the Lambergs filed an application with the board for a variance from the lot width and frontage regulations set forth in §§ 14(a)(width) and 14(b)(frontage) of the Westwood zoning by-law. The application included a request for a variance from § 14(a) because at the time the Lambergs were unsure whether their lot complied with the dimensional requirements of that section. They subsequently determined that they could meet the § 14(a) requirements.

In a letter to the board, the building commissioner confirmed that a home could be constructed on the subject lot in compliance with the § 14(a) lot width requirement, but that the lot fell short of the § 14(b) frontage requirement.[2] The commissioner suggested that the board make a decision as to both §§ 14(a) and 14(b).

A hearing was held on the Lambergses' application on December 9, 1993. It focused on their request for a variance from the § 14(b) frontage requirement. At the hearing, the Lambergses' attorney stated that the frontage shortage was the only area of nonconformity with the zoning by-law. On January 27, 1994, the board held a second hearing on the Lambergses' variance application. On February 3, 1994, the board rendered its decision. It was filed with the town clerk on the same date. The decision stated that the board had voted to deny the Lambergses' request for a variance from § 14(a) of the Westwood zoning by-law. No reference was made to § 14(b).

On March 15, 1994, 112 days after their application had been filed, the Lambergses filed with the town clerk a request for a certificate stating that they had been granted a constructive variance from the requirements of § 14(b) pursuant to G. L. c. 40A, § 15, as amended by St. 1987, c. 498, § 3. Section 15 provides, in pertinent part: "The decision of the board shall be made within one hundred days after the date of the filing of an appeal, application or petition . . . . Failure by

---

[2]According to the Lambergses' attorney, the lot fell short of the required 125 feet of frontage by ten to fourteen feet.

the board to act within said one hundred days or extended time, if applicable, shall be deemed to be the grant of the appeal, application or petition."

On March 25, 1994, the board filed a second decision regarding the Lambergses' application, terming it an amended decision. That same day the board filed a "Notice of Amended Decision" which stated that the purpose of the second decison was to correct an inadvertent omission in the original decision of February 3, 1994. The second decision denied the Lambergses' request for a variance from both §§ 14(a) and 14(b) of the zoning by-law.

On April 1, 1994, the board filed an appeal in the Norfolk Superior Court pursuant to G. L. c. 40A, § 17,[3] seeking a determination that it had acted within the time constraints set forth in G. L. c. 40A, § 15, and requesting that the court deny the defendants' request for approval of a variance. The board contended that its failure to refer to § 14(b) in its original decision had been an inadvertent clerical error which its amended decision had corrected. It asserted that the amended decision did not change the result of the original decision or grant relief different from that originally granted. The Lambergses moved for summary judgment on September 22, 1995, seeking a determination that they were entitled to a constructive grant of a variance from § 14(b). After a hearing, the Superior Court judge allowed the Lambergses' motion for summary judgment. She determined that the Lambergses were entitled to the constructive grant because the board had failed to take timely action on their application for a variance from the § 14(b) frontage requirements. She ordered the town clerk to issue a certificate to that effect.

The board here makes the same argument it made in the Superior Court. It contends that it acted within the required

---

[3]The board erroneously brought its action as an appeal pursuant to G. L. c. 40A, § 17, which provides for persons aggrieved and for certain municipal officers and boards to appeal *from* a decision of the board. The incorrect recitation of the jurisdictional basis of a complaint is, however, "a minimal type of defect which never has been fatal to an action." *Twomey* v. *Board of Appeals of Medford*, 7 Mass. App. Ct. 770, 772-773 (1979). See *Gallant* v. *Worcester*, 383 Mass. 707, 709-710 (1981); Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974). In substance, the board asked the court to determine whether its second decision had cured the deficiencies in its original decision. The action should have been brought as a complaint for a declaratory judgment under G. L. c. 231A. We will treat it as such.

statutory period, but made a clerical error which it should be permitted to correct. It further contends that when the Lambergses received the original decision, they knew or should have known that there was an error, since all the testimony at the hearing had centered around the § 14(b) frontage issue. Thus, asserts the board, the Lambergses should have sought a clarification or filed an appeal from the decision within the twenty-day statutory appeal period provided by G. L. c. 40A, § 17.[4] We affirm.

General Laws c. 40A, § 15, directs the board to make its decision within one hundred days after the date an application is filed and provides that the board's failure to do so will result in a constructive grant to the applicant. See *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 621-622 (1983).[5] Section 15, as inserted by St. 1975, c. 808, § 3, further provides that the decision must include "a detailed record of [the board's] proceedings, indicating the vote of each member upon each question. . . ." The Lambergses' application required the board to decide two distinct questions: whether the applicants were entitled to a variance from § 14(a) requirements for lot width and whether they were entitled to a variance from § 14(b) requirements for frontage. The board's original decision failed to address one of the two questions before it within the required one hundred days after the Lambergses had filed their application.

The second decision, which addressed both §§ 14(a) and 14(b), was filed 122 days after the Lambergses' application had been filed. The board's failure to act on the request for a variance from the § 14(b) frontage requirement within one hundred days after the Lambergses had filed their application entitled them to a constructive variance regarding § 14(b).

---

[4]Section 17, as amended through St. 1989, c. 649, § 2, provides, in pertinent part, that "[a]ny person aggrieved by a decision of the board of appeals . . . or by the failure of the board of appeals to take final action concerning any . . . application . . . within the required time, . . . may appeal [to a prescribed department of the trial court] by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk."

[5]At the time of the *Capone* decision, the statutory time period for the board to make a decision was seventy-five days, pursuant to G. L. c. 40A, § 15, as appearing in St. 1975, c. 808, § 3. The Legislature extended the period to one hundred days by St. 1987, c. 498, § 3.

See *Rinaudo* v. *Zoning Bd. of Appeals of Plymouth*, 383 Mass. 885, 885 (1981).[6]

This result furthers the legislative policy underlying the statutory provision entitling an applicant to a constructive grant if the board fails to act in a timely manner. The Legislature imposed the time constraint in order "to induce the board to act promptly." *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. at 623. Moreover, by specifying that the board must provide a detailed record of its proceedings as well as each member's vote on each question, the Legislature required the board to be thorough as well as prompt. As the court held in *Capone*, the board's failure to perform "all" of the actions required by the statute will result in constructive relief. *Ibid.* The board's suggestion that the Lambergses should have noted its error and sought clarification or filed an appeal seeks unfairly to shift the responsibility for the board's inaction to the applicants. The Lambergses were entitled to avail themselves of the remedy of constructive relief provided by the Legislature.

Finally, the board's second decision of March 25, 1994, cannot stand as an amendment of its original decision because it changes the original decision substantively. "A board of appeals has inherent power to amend a decision by adopting and filing a statement of further reasons for its decision (*Dion* v. *Board of Appeals of Waltham*, 344 Mass. 547, 550, 552-553 [1962]) so long as no one entitled to notice of the original decision is prejudiced by a late filing of the amendment (*Shuman* v. *Board of Aldermen of Newton*, 361 Mass. 758, 763, 764-765, 767-768 [1972]) and so long as the amendment is within the scope of the original petition and does not change the result of the original decision. *Fish* v. *Building Inspector of Falmouth*, 357 Mass. 774, 775 [1970]." *Potter* v. *Board of Appeals of Mansfield*, 1 Mass. App. Ct. 89, 95 (1973).

Here, the consequences of the second decision would differ in a crucial respect from the result of the original decision. The initial denial of a variance from the requirements of § 14(a) alone would not have precluded the construction of a building because the lot complied with those requirements. The second decision's denial of a variance from the § 14(b)

[6]At the time of the *Rinaudo* decision, the board was required to make its decision within seventy-five days. See note 5, *supra.*

frontage requirements would, however, have precluded the construction of the proposed building.

*Judgment affirmed.*